FANNY H. AMES & others, executors & trustees, *vs.*
PAULINE AMES & others.

Bristol.    October 23, 1922. — March 6, 1923.

Present: BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Devise and Legacy*, Exercise of power of appointment, Residuary clause.  *Equitable Conversion.*

A testator who died in 1895 by his will provided that his entire estate should be
held by trustees, who were empowered to retain property owned by him or to
sell and invest the same, and were directed to pay the income of one fourth
thereof to his widow and the income of three fourths thereof to his six children,
two sons and four daughters, and in 1905 to divide the three fourths into six
equal parts and transfer one half of each part absolutely to the respective
children and retain the other half in the trust for their benefit and pay the in-
come therefrom to each child respectively.    It also was provided that upon
·the death of his widow one half of the trust fund for her benefit should be
added to the trust fund for each son and held by the trustees upon "the same
terms and conditions as those governing the trust which is to be created in their
[his children's] behalf in and after the year 1905."    The widow died in 1917.
The will gave to one son a general power of appointment over his share of
the estate held in trust in the event he had no children.    That son died in 1918
without children and leaving a widow.    By the ninth clause of his will he gave
to his widow "all my real estate absolutely" and provided that the net in-
come "except as hereinafter provided" was to be paid to his wife for her life
but in the event of her marriage, in lieu of the income, she was to be paid
$50,000.    By the eleventh clause of his will that son devised and bequeathed
"all the rest, residue and remainder of my property, real, personal and mixed,
including all the property over which I have power of appointment and disposal,"
to nephews and nieces and upon failure of certain lives to an educational institu-
tion.    After the death of that son the trustees of the father's will sold certain
real estate which was possessed by them in 1905 and had been retained in the
trust without division in whole or in part among the children.    Upon a petition
by the executors and trustees of that son's will for instructions as to whether
the proceeds received from the sale of the real estate  should pass to his widow
under the ninth clause of his will or whether it should pass as personal property
to the trust fund created by his will, it was *held*, that

(1) The proceeds of such real estate which formerly was held by the trustees
of the father's will under the trust and of that which should have been trans-
ferred in 1905 to the son were to be treated as would the real estate if it had
not been sold;

(2) The son had as to one sixteenth of the real estate in question a complete
equitable estate in fee simple, subject only to the trustees' power of sale, which
he could devise;

(3) The one sixteenth of the proceeds from the sale of the real estate which

belonged to the son outright passed under the ninth clause of his will and belonged to his widow absolutely;

(4) The son had merely a power of appointment over the one sixteenth of the proceeds from the sale of the real estate which should have been added to the trust fund for his benefit and the two sixteenths which on the death of his mother should have been added to that fund;

(5) The son intended that the three sixteenths of the proceeds of the sale of the real estate over which he had a power of appointment should be retained by the trustees under his will subject to the right of his widow in the income thereof and on her decease or marriage it was to be disposed of under the eleventh clause of his will to the residuary legatees and devisees.

PETITION, filed in the Probate Court for the county of Bristol on October 25, 1921, by Fanny Holt Ames, Old Colony Trust Company and Daniel F. Buckley, executors and trustees under the will of William Hadwen Ames, late of Easton, for instructions as to whether the proceeds received from the sale of certain real estate should pass to Fanny Holt Ames, the widow of William Hadwen Ames, under the provision of his will giving outright to his widow "all my real estate absolutely," or whether it should pass as personal property to the trust fund created by the will.

The defendants include Fanny Holt Ames the testator's widow, the four children of his brother Oakes Ames, his three sisters Evelyn Ames Hall, Susan Ames Taylor and Anna Lee Ames Nowell and their children, three children of his sister Lillian Ames Chatman, such of whom as were minors being represented by guardians *ad litem,* Massachusetts Institute of Technology, the Attorney General for the Commonwealth and Stanley P. Hall, next friend for persons unascertained or not in being who were or might become interested in the subject matter of the suit. The Attorney General for the Commonwealth appeared but did not file an answer and the Massachusetts Institute of Technology neither appeared nor filed an answer and the bill as against them was taken as confessed. All other interested parties defendant filed appearances and answers.

The suit was heard in the Probate Court upon the petition and answers by *Hitch,* J. It appeared from the petition and was admitted by the answers that the fourth, fifth, sixth and ninth clauses of the will of Oliver Ames provided as follows:

"Fourth. In the year 1905, for the said estate, separate accounts shall be established by said trustees. One-fourth part of said estate is to be set apart for the benefit of my wife the said Anna

C. Ames, and the income thereof is to be paid to her as hereinbefore provided.

"Fifth. At the said last mentioned date, the other three-fourths parts of said estate are to be divided into six equal parts, one of which is to be for the benefit of each of said children. Of each of these parts, one-half is to be transferred absolutely by said trustees to each of my said children; the other half of each of these parts is to be held as hereinbefore provided by said trustees for the benefit of my said children, to each of whom the said trustees are to pay annually the net income of one-sixth part of this residue of my estate.

"Sixth. . . . At his [William Hadwen Ames] decease the property of my estate which is held in trust for him is to be distributed and disposed of among his children, if any, who are born after this date, and in such manner as he may direct by any instrument in the nature of a will signed by him in the presence of three witnesses. And if he shall have no children born after this date, then his said share of said trust property to be disposed of by him by such instrument and in such manner as he may see fit. And, failing any disposition by him as aforesaid, all his share of said trust property is to be added by said trustees to the shares of my other children in said trust property, to be held and disposed of, principal and income, as hereinbefore provided."

"Ninth. At the decease of my wife, the said Anna C. Ames, the said trust fund held for her benefit as aforesaid is to be added to the trust funds of the said William H. Ames and the said Oakes Ames, one-half to each of said funds, and no part of the said trust fund held for the benefit of my wife, the said Anna C. Ames, is at any time to be transferred absolutely to the said William H. Ames or to the said Oakes Ames, but all of said trust fund is to be held in trust for them, after the decease of my wife, the said Anna C. Ames, on the same terms and conditions as those governing the trust which is to be created in their behalf in and after the year 1905."

The will of William Hadwen Ames commences as follows:

"I, William Hadwen Ames, of Easton, in the County of Bristol, in the Commonwealth of Massachusetts, being of full age and sound mind, do make, publish and declare this to be my last will and testament, and my instrument of appointment under the

power given to me by the will of my father, Oliver Ames, late of said Easton dated November 4, 1899 and the codicils to the same, and I declare that I intend by this will and instrument to dispose of all my property of every kind of which at my death I may be seized or possessed, or over which I may then have any power of disposition or disposal whatsoever, including the trust fund now held for my benefit by the Trustees of my father's estate, and the trust fund which is added to said trust fund by the death of my mother. Meaning and intending hereby to exercise all the powers of appointment and disposal given to me by the will of my father as above referred to, and I declare in connection herewith that I have no children born after the date of my father's will."

By the next eight clauses of that will, marked "First" to "Eighth" therein, inclusive, the testator appointed the petitioners executors of said will and trustees thereunder and provided for certain pecuniary bequests. By the ninth clause of said will the testator provided:

"Ninth: Should my wife, Fanny Holt Ames, survive me I give, devise and bequeath to her as in this and the two following paragraphs, — All my real estate absolutely.

I give, devise and bequeath to my wife, Fanny Holt Ames, all the furnishings, furniture, works of art, silver, glass, china, books, jewelry, ware, personal effects, bric-a-brac, household goods, and everything of this nature in my houses, the one in Easton (North), and the one in Boston, No. 267 Commonwealth Avenue, and also all my carriages, automobiles, all the machinery in my factory on Oliver Street in said Easton (North) and all the personal property of every kind and nature in use on either of my said places in Easton (North) and in Boston.

After the payment of all preceding legacies and bequests in this will, I give and bequeath to my wife, Fanny Holt Ames, for and during her life, except as hereinafter provided, the net income of my estate to be paid to her quarterly or otherwise as convenient to the Executors and Trustees herein named, subject, however, to this condition, that in the event of her marriage, said income to her shall cease and in lieu thereof I give and bequeath to her Fifty Thousand (50,000) Dollars in cash or in securities and my remaining estate shall then be distributed as hereinafter provided."

By the eleventh clause of said will it was provided as follows:

"Eleventh: After the payment of all preceding legacies, bequests and devises under this will, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, including all the property over which I have power of appointment and disposal, as follows, namely:"

The testator then made provisions for his nephews and nieces, and in the event of the failure of certain lives, for the Massachusetts Institute of Technology.

Other material facts are described in the opinion. By order of the judge a decree was entered as follows: "There was no express direction in Oliver Ames' will for the trustees to sell the real estate in the trust; the authority to sell was for the purpose of changing investments; no intestacy would result if the real estate had not been converted into money; there was no necessity for changing the real estate into money for the purpose of division, however convenient it might have been; no clear intention can be implied from the language or general scope of the will to convert the realty into personalty, and nothing to take the case out of the general rule that the proceeds of the real estate sold by the trustees, must be treated as realty until the fund resulting from the sale reaches the one who is entitled to treat it as his own absolutely and for all purposes — in this case Fanny Holt Ames; there is no distinction in principle between the disposition of the proceeds of the share of real estate which William Hadwen Ames was entitled to have distributed to him in 1905, or which was to have been put into the trust fund for his benefit, or which came from Anna C. Ames' share of said real estate after her death; the ninth clause of William Hadwen Ames' will is in exercise of the power of appointment given him in the will of his father, Oliver Ames, and includes all real estate aforesaid, or the proceeds thereof in the possession of the trustees of Oliver Ames' estate, to which William Hadwen Ames was entitled or in which he was beneficially interested, and over which he had a power of appointment; the petitioners are therefor instructed that the funds resulting from the liquidation of said real estate received by them from the trustees under the will of Oliver Ames, the disposition as to which they are in doubt, belong to Fanny Holt Ames absolutely and should be paid over to her."

The defendants, with the exception of Fanny Holt Ames,

Massachusetts Institute of Technology, the Attorney General for the Commonwealth and Stanley P. Hall, next friend, appealed.

The case was argued at the bar in October, 1922, before *Braley, Pierce, Carroll, & Jenney,* JJ., and afterwards was submitted on briefs to all the Justices except *Rugg,* C.J. & *Jenney,* J.

*D. F. Buckley,* for the plaintiffs, stated the case.

*B. E. Eames,* (*W. C. Rice* with him,) for the appellants.

*S. P. Hall,* next friend for issue unborn and unascertained.

*C. F. Choate, Jr.,* (*H. Schnare* with him,) for Fanny Holt Ames.

CARROLL, J.　This is a petition by the executors and trustees under the will of William Hadwen Ames, for instructions as to the disposition of the proceeds received from the recent sale of real estate in the estate of his father, Oliver Ames, who died testate October 22, 1895. Anna C. Ames, the widow of Oliver Ames, died March 11, 1917. William Hadwen Ames, whose will is before us for construction, died March 26, 1918.

By the will of Oliver Ames, dated November 4, 1889, his entire estate was left to trustees to pay the income of one fourth to his wife during her life and to hold the other three fourths for the benefit of his six children. In the year 1905 this three fourths was to be divided into six equal parts — one half of each part to be transferred absolutely to his respective children and the other half to be held by the trustees for their benefit, and the incomes therefrom paid respectively to each. By the sixth clause, William Hadwen Ames was given a special power of appointment if he had children born after the date of the will, and if not, a general power of appointment over his share of the property held in trust. He died leaving no children born after the date of his father's will. On the death of the widow of Oliver Ames the one fourth of the estate given to her was to be held by the trustees for the benefit of William Hadwen Ames and his brother Oakes Ames in trust, upon the same conditions "as those governing the trust which is to be created in their behalf in and after the year 1905."

In the possession of the trustees in 1905 was certain real estate, including a residence on Commonwealth Avenue, a stable on Newbury Street, both in Boston, and other lots of unproductive real estate. This property being unliquidated in 1905 and not susceptible of convenient division in specie into shares provided by the fifth clause of Oliver Ames's will, the trustees retained in

the trust and did not transfer in whole or in part the said real estate to his children. Said trustees have recently, however, before the filing of this petition, "been able to sell substantially all said real estate," and "have received therefor substantial sums of money," and have turned over to the petitioners that portion to which the said William Hadwen Ames would be entitled if he were living, and that portion over which he had the power of appointment under the will of Oliver Ames. They have turned over to the petitioners four sixteenths of the entire proceeds of said real estate, made up as follows: One half of one sixth of three fourths, equalling one sixteenth, which by the fifth clause should have been transferred outright to William Hadwen Ames. One half of one sixth of three quarters, equalling one sixteenth, which under the fifth clause of his father's will should have been added to the trust fund for William Hadwen Ames in 1905. One half of one fourth, equalling two sixteenths, which under the provisions of the ninth clause of said Oliver Ames's will should have been added to the trust fund on the death of Anna C. Ames, widow of Oliver, over which William Hadwen Ames had power of appointment.

When this will was before us in *Ames* v. *Ames,* 238 Mass. 270, it was decided that William Hadwen Ames, hereinafter called the testator, did by the ninth clause of his will exercise the power of appointment and appoint to his widow the income of the property owned by him outright and the income of the property held in trust under his father's will. We have now to decide whether the proceeds of the sale of the real estate coming from the estate of Oliver Ames should pass, to the widow of the testator under the ninth clause of his will giving to her " All my real estate absolutely," or under the eleventh clause by which the residue of his property was disposed of..

It appears from the first, second and third clauses of the will of Oliver Ames that down to 1905 the trust fund was to be dealt with as a whole, and all or part of it might be held in real estate, including by specific authority, such real estate as Oliver Ames owned at his death. By the fourth clause it is provided that in 1905, "for the said estate, separate accounts shall be established by said trustees," and one fourth set aside for the benefit of his widow. In our opinion, Oliver Ames intended by his will, that in 1905 the trustees should establish separate accounts and that

they should go on administering the trust as before that time, except for the division of it into the parts designated. They were not required to wind up the trust, and as to the second trust, they had the same power of investment and reinvestment as they had over the first trust, and were entitled to carry the property of the first trust over into the second trust. There was nothing in the nature of a mandatory direction calling for the sale of the real estate. Authority was given the trustees under the will of Oliver Ames to "sell, invest and reinvest the said estate in real and personal estate," and the provision in the third clause of the second codicil of the will of Oliver Ames provided, "I direct my said executors and trustees to pay my debts as soon as convenient after my decease, and to that end, believing it to be for the best interests of all my heirs, I advise and request that my homestead estate, situate on the corner of Commonwealth and Massachusetts Avenues, in said Boston, be sold as soon as a reasonable and fair price therefor can be obtained." The words "request" and "advise" would indicate that the power conferred was discretionary. See *Heard* v. *Read,* 171 Mass. 374; *Cronan* v. *Adams,* 189 Mass. 190. See also *Welch* v. *Howard,* 227 Mass. 242. The real estate held by the trustees under the trust and the real estate which should have been transferred in 1905 to the testator, is to be regarded as such, and not as personal property under the theory of equitable conversion. *Hovey* v. *Dary,* 154 Mass. 7. *Gray* v. *Whittemore,* 192 Mass. 367. In 1905 the property mentioned in the codicil just referred to, with the other unproductive real estate owned by Oliver Ames at his death, was held by the trustees without division or transfer in whole or in part among his children. This real estate belonging to the trust stood subject to the rights of the beneficiaries under his will, in accordance with the limitations prescribed. Each child, including William Hadwen Ames, was entitled to have it turned into the trust fund held for his benefit, and the widow of Oliver Ames was entitled to one fourth of the fund held for her benefit.

As to the one sixteenth to which the testator was entitled in 1905 under the terms of his father's will, this part was to be "transferred absolutely" to the testator by the trustees; and while the trustees transferred to the testator and the other children of Oliver Ames substantially the share each was to receive, the real estate

in question was retained and not divided. His share in this real estate should have been transferred outright to the testator. The trustees were not under a mandatory authority to dispose of it before turning it over to him. He had a complete equitable estate in fee simple in this property, subject only to the trustees' power of sale. It was, therefore, an equitable interest which he could devise. See *Newhall* v. *Wheeler,* 7 Mass. 189; *Reardon* v. *Reardon,* 192 Mass. 448; *Daly* v. *Gaskins,* 240 Mass..260.

In the first paragraph of the ninth clause of the testator's will, "All my real estate absolutely" was given to his wife. He intended in this paragraph to devise to his wife all the real estate to which he had the legal title, and also the real estate which in 1905 should have been turned over to him outright by the trustees. The fact that in the succeeding paragraph of the ninth clause reference is made to certain personal property in his houses at North Easton and Boston, his carriages, automobiles and machinery in his factory, and that these things are given his wife, does not limit the absolute devise to her of all the real estate. The part of the real estate we are considering, which belonged to him under his father's will, was a part of his real estate which he intended in this clause of his will to devise to his wife; and we find nothing in the will indicating that he had in mind, in making this devise, merely the real estate to which he had the legal title. All his real estate was included, and the will, taken as a whole, does not disclose a contrary intention. The petitioners are instructed that the proceeds of the sale of the real estate which should have been transferred to the testator in 1905 under the will of his father, belongs to his widow under the ninth clause of her husband's will.

The question remains as to the one sixteenth which under the will of the father of the testator should have been added to the trust fund for his benefit, and the two sixteenths which on the death of his mother should have been added to this fund. In the ninth clause of the.testator's will, in addition to the devise of his real estate absolutely, he provided that the net income of his estate, "except as hereinafter provided," was to be paid to his wife for her life; but in the event of her marriage, in lieu of the income, she was to be paid $50,000. In the eleventh clause of his will he devises and bequeaths "all the rest, residue and remainder

of my property, real, personal and mixed, including all the property over which I have power of appointment and disposal." The proceeds of this part of the real estate were a part of the fund to be held by the trustees during the life of the testator, and he had over this property and its proceeds, merely the power of appointment. He could dispose of it, because authorized by the will of his father. He did not own it in the true sense of the term. It was not, strictly speaking, his real estate, but he could, as his father's will directed, dispose of it "by any instrument in the nature of a will signed by him in the presence of three witnesses." *Clapp* v. *Ingraham*, 126 Mass. 200. *Shattuck* v. *Burrage*, 229 Mass. 448. This reference in the eleventh clause of the will to the power of appointment and his power of disposal, indicates that he had in mind in making said clause all the remaining property in the trust, both real and personal, including the real estate in question. By such allusion to the power of appointment and disposal, he distinguishes this part of his real estate from the real estate owned in fee by him, which was referred to in the ninth clause. Under the ninth clause he did not dispose of any real estate except his own. He did not deal with the real estate held in trust except so far as the income was disposed of, and he did not otherwise in this clause of his will exercise the power of appointment.

The rule that a general devise may constitute an exercise of a power of appointment, *Amory* v. *Meredith*, 7 Allen, 397, is limited to cases where there is nothing in the will to show a contrary intention. *Thompson* v. *Pew*, 214 Mass. 520. *Stone* v. *Forbes*, 189 Mass. 163. In the last mentioned case it was said at page 168, "in regard to special as well as in regard to general powers, the question is one of intention on the part of the donee of the power." We think that the testator intended that this portion of the total proceeds of the sale of the real estate over which he had the power of appointment, was to be retained by the petitioners, subject to the right of the testator's widow in the income thereof, and on her decease or marriage it is to be disposed of under the eleventh clause of his will to the residuary legatees and devisees.

The decree of the Probate Court must be modified and a decree entered instructing the petitioners that the one sixteenth of the proceeds of the real estate which belonged to the testator outright,

passed under the ninth clause of his will and belongs to his widow absolutely. The three sixteenths passed under the eleventh clause, subject to the right of the testator's widow to the income; and so modified the decree is affirmed. Costs as between solicitor and client to be taxed on the fund in the discretion of the judge of probate.

*So ordered.*